**KILPATRICK TOWNSEND & STOCKTON LLP**
Frederick L. Whitmer (FW-8888)
Robert Potter
Olivia Harris
*Pro hac vice applications forthcoming*
The Grace Building
1114 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 775-8733
Facsimile:  (212) 775-8816
*fwhitmer@kilpatricktownsend.com*
*rpotter@kilpatricktownsend.com*
*oharris@kilpatricktownsend.com*

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAN'T LIVE WITHOUT IT, LLC D/B/A S'WELL BOTTLE,<br><br>Plaintiff,<br><br>v.<br><br>CLOSEOUT SURPLUS & SALVAGE, INC. d/b/a CSS, INC., TRADEMARK WASTE SOLUTIONS LLC, AUGIE EXPRESS, INC., ROBERT FALLAS, T. FARESE & SONS d/b/a DIRECT WASTE SERVICES, LINCOLN RECYCLING SERVICES, LLC, and JOHN DOES 1-5,<br><br>Defendants. | Case No. _____<br><br>**<u>COMPLAINT</u>**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Can't Live Without It, LLC d/b/a S'well Bottle ("S'well"), 28 West 23rd Street,

New York, New York 10011, by its attorneys Kilpatrick Townsend & Stockton LLP, brings this

Complaint against Defendants Closeout Surplus & Salvage, Inc. d/b/a CSS, Inc. ("CSS"), 35

Love Lane, Netcong, New Jersey 07857; Trademark Waste Solutions LLC ("TWS"), 113 E.

Centre Street, Nutley, New Jersey 07110; Augie Express, Inc. ("AEI"), 00-46 Morlot Avenue,

Fair Lawn, New Jersey 07410; Robert Fallas ("Fallas"), 015 E. 25th Street, Apartment 2,

Paterson, New Jersey 07513; T. Farese & Sons d/b/a Direct Waste Services ("DWS"), 50 Park Place, Suite 1401, Newark, New Jersey 07102; Lincoln Recycling Services, LLC ("LRS"), 4711 Dell Avenue, North Bergen, New Jersey 07047; and John Does 1-5 acting in concert with any or all of them (collectively, "Defendants"). S'well is informed and believes, and therefore alleges, as follows:

## INTRODUCTION

1.      Plaintiff S'well sought to destroy more than 20,000 defective water bottles bearing its trademarks, and to recycle the resulting scrap metal. Defendants—many of whom operate waste or recycling services—instead apparently acted in concert to steal those bottles, certify fraudulently that the bottles had been destroyed, and then offer those bottles for sale as new, genuine S'WELL bottles when in fact those bottles remained defective and potentially unsafe. Moreover, because the bottles bore S'well's trademarks but were sold without its authorization, they also were counterfeit and infringing. Accordingly, S'well seeks injunctive relief against and monetary relief for Defendants' willful and concerted acts of trademark counterfeiting, trademark infringement, unfair competition, and unfair and deceptive trade practices in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and New Jersey statutory and common law.

2.      S'well was founded in 2010 with the mission to rid the world of plastic water bottles, and S'well has become one of the most popular and respected brands of reusable insulated water bottles in the United States and abroad. S'well offers a wide range of safe, stylish, high-quality and eco-friendly products under the S'WELL brand, the registered S'WELL trademark, and the stylized droplet logo (shown below), among others (collectively, the "S'WELL Marks").



2

S'well's tremendously successful line of S'WELL brand stainless steel reusable insulated bottles (the "S'well Bottles") come in a variety of sizes, colors, and textures. Representative images of the S'well Bottles are shown below.



3.      S'well recently discovered that Defendants have acted in concert to market and sell counterfeit S'well Bottles, *i.e.* water bottles bearing unauthorized trademarks that are identical to, substantially indistinguishable from, or otherwise confusingly similar to the registered S'WELL Marks.

4.      Pursuant to this common plan to commit these tortious acts, Defendants have falsely represented that their offerings are new, genuine S'well Bottles when in fact Defendants' water bottles are counterfeit and infringing, and are otherwise materially different from genuine S'well Bottles.

5.      Defendants have passed off their counterfeit and infringing goods to the unsuspecting public under the S'WELL Marks in a deliberate, bad faith effort to trade on the goodwill and prestige of those marks, each of which acts as a source identifier for S'well and its premium S'well Bottles. By intentionally generating consumer confusion and unfairly competing with S'well's genuine S'well Bottles, Defendants are eroding the substantial goodwill, value, and public recognition that S'well has developed in its S'WELL Marks as connoting reusable insulated water bottles of the highest quality. Moreover, given the nature of the products at issue, Defendants' counterfeit and infringing goods pose a potential health and safety risk to consumers.

6.     By and through these deliberate, willful, and malicious acts, Defendants are depriving S'well of the ability to control the quality of products bearing S'well's S'WELL Marks, thus causing immediate and irreparable harm to S'well and the public. Further, on information and belief, Defendants have generated significant revenue as a result of their use of S'well's S'WELL Marks in connection with their counterfeit and infringing goods.

7.     Accordingly, S'well brings this action for federal trademark counterfeiting, trademark infringement, unfair competition, and false designation of origin under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and unfair competition under N.J. Rev. Stat. §§ 56:4-1 and 56:4-2 and the common law. S'well seeks injunctive relief as well as compensatory, exemplary, and punitive damages.

## PARTIES

8.     Plaintiff Can't Live Without It, LLC d/b/a S'well Bottle is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 28 West 23rd Street, New York, New York 10011.

9.     On information and belief, Defendant Closeout Surplus & Salvage, Inc. d/b/a CSS, Inc. is a corporation organized and existing under the laws of the State of New Jersey and having its principal place of business at 35 Love Lane, Netcong, New Jersey 07857.

10.     On information and belief, Defendant Trademark Waste Solutions LLC is a limited liability company organized and existing under the laws of the State of New Jersey and having its principal place of business at 113 E. Centre Street, Nutley, New Jersey 07110.

11.     On information and belief, Defendant Augie Express, Inc. is a corporation organized and existing under the laws of the State of New Jersey and having its principal place of business at 00-46 Morlot Avenue, Fair Lawn, New Jersey 07410.

12.     On information and belief, Defendant Robert Fallas is an individual citizen of the State of New Jersey who resides and does business in the State of New Jersey and this District, including without limitation at Defendant Augie Express, Inc.'s principal place of business in Fair Lawn, New Jersey.

4

13.     On information and belief, Defendant T. Farese & Sons d/b/a Direct Waste Services is a corporation organized and existing under the laws of the State of New Jersey and having its principal place of business at 50 Park Place, Suite 1401, Newark, New Jersey 07102.

14.     On information and belief, Defendant Lincoln Recycling Services, LLC is a limited liability company organized and existing under the laws of the State of Ohio, and through its subsidiary, Eagle Recycling Systems, Inc., it has a place of business at 4711 Dell Avenue, North Bergen, New Jersey 07047.

15.     On information and belief, Defendant John Does 1 through 5 are entities and individuals whose identities and addresses are presently unknown to S'well and are not presently capable of ascertainment, but who have offered to sell or have sold, or are offering to sell or are selling, goods that infringe S'well's intellectual property rights, in the State of New Jersey and this District, and accordingly are subject to the jurisdiction and venue of this Court.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over S'well's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

17.     This Court has personal jurisdiction over Defendants because Defendants (a) have engaged in concerted acts within the State of New Jersey pursuant to a common plan to market, distribute, offer for sale, and sell goods that infringe S'well's intellectual property; (b) maintain one or more residences or physical places of business in the State of New Jersey; (c) regularly transact and conduct business within the State of New Jersey; or (d) have otherwise made or established contacts with the State of New Jersey sufficient to permit the exercise of personal jurisdiction.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because one or more Defendants reside or do business in this District, or a substantial part of the events or omissions giving rise to the claim occurred in this District.

5

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.      S'well, the S'well Bottles, and the S'WELL Marks**

19.      Since its founding in 2010, S'well's mission was and is to rid the world of plastic water bottles and to create products that are both beautiful and eco-friendly, that infuse innovation with inspiration, and that continue to give back to communities in need. The S'well Bottles—which keep beverages cold for up to 24 hours and hot for up to 12 hours—represent S'well's commitment to the highest level of innovation, performance, and quality. That unwavering commitment has helped make S'well a brand leader in the water bottle industry, both in the United States and abroad.

20.      S'well has made a substantial investment in brand protection and in controlling the quality of the products sold under its S'WELL Marks, both in terms of safety and aesthetics. S'well's quality control measures relating to safety include, without limitation, standards and procedures intended to reduce any harmful byproducts as a result of the manufacturing of the S'well Bottles, which are composed of a non-leaching, 18/8-grade stainless steel free of bisphenol A ("BPA"), an industrial chemical found in many plastics. S'well's quality control measures relating to aesthetics include, without limitation, standards and procedures intended to ensure that the exterior finish and decoration on S'well Bottles is beautiful, luxurious, and free of visible defects such as double printing, bleeding, smearing, fading, scratches, dents, and crimping.

21.      S'well exerts significant efforts to ensure that its manufacturers and suppliers adhere to its stringent quality control measures, including, without limitation, by conducting periodic inspections of the facilities at S'well's contract factories in China and conducting inspections of random products "off the line" in each manufacturing run in those factories. Products or product runs that fail to adhere to S'well's quality control measures are rejected, and any defective products are destroyed and recycled. S'well does not market or sell or authorize the marketing or sale of "factory seconds" or any other products that do not meet S'well's strict standards.

22.     As a consequence of these significant efforts, S'well has earned a reputation among both consumers and members of the water bottle industry for delivering high-quality stylish products made with exceptional materials and beautiful workmanship. In addition, many consumers purchase S'well Bottles not only because of S'well's reputation for products of the highest quality, but also because of S'well's partnerships with numerous charitable organizations to give back to the community and S'well's commitment to health, wellness, conservation, and the environment. As a result, the S'well Bottles are among the most popular drinking containers offered in the United States and around the world.

23.     S'well authorizes distribution of its S'well Bottles only through limited and tightly-controlled sales channels. Products bearing the S'WELL Marks are sold at well-known nationwide retailers and department stores, including ABC Carpet and Home, Bloomingdales, Crate + Barrel, Equinox Health Centers, J Crew, Neiman Marcus, Nordstrom, Saks, Starbucks, and Williams Sonoma, as well as numerous other authorized retailers in the United States and abroad.

24.     Since 2010, S'well has undertaken extensive marketing, promotion, and advertising of the S'WELL brand and the S'well Bottles, including through print, video, and online advertising. S'well also employs a robust social media and marketing team to promote the S'WELL brand and the S'well Bottles on all leading social media sites, including Facebook, Twitter, Instagram, and Snapchat. These efforts have been incredibly effective, resulting in widespread and favorable public recognition of the S'WELL brand, S'WELL Marks, and S'well Bottles.

25.     The S'WELL brand and S'well Bottles have also received extensive unsolicited media coverage, including in widely-circulated magazines such as *Cosmopolitan*, *Elle Canada*, *Glamour*, *InStyle, Marie Claire*, *People*, *Seventeen*, *Time*, *US Weekly*, *Vogue*, and *Teen Vogue*, and newspapers such as *The Boston Globe*, *Chicago Tribune*, *The Miami Herald*, *The New York Times*, *NY Daily News*, and *The Washington Post*, and on television news shows including *CBS News* and *The Today Show*.

26.     From time to time, S'well creates custom S'well Bottles with and for appropriate brands, corporations, events and individuals that echo S'well's mission, including without limitation Apple, Audi, BMW, Boeing, Delta, Evernote, Facebook, Google, H&M, Harvard University, the National Basketball Association, and Starbucks.

27.     Since 2010, S'well has produced and distributed tens of millions of bottles around the globe, generating millions of dollars in sales and enormous consumer goodwill. Indeed, S'well was among the 60 brands featured in the 2016 Interbrand Breakthrough Brands Report, and more recently was among only 25 brands named as Forbes' 2018 Brand Officials, selected to represent the best products and services in the luxury hospitality industry. S'WELL brand products, including the S'well Bottles, have also won numerous industry awards and other distinctions.

28.     In the minds of consumers, S'well's S'WELL Marks symbolize a line of premium products having the highest level of quality. Those marks also identify and distinguish S'well as the single source of those products. Through its continuous, substantially exclusive, and lengthy use of its S'WELL Marks, S'well has developed substantial goodwill, value and recognition in those marks.

**B.     S'well's U.S. Trademark Registrations**

29.     In addition to the common law rights S'well has developed through use of the S'WELL Marks, S'well is the owner of numerous federal trademark registrations for the S'WELL Marks, including without limitation the following marks ("S'well's Registered Marks"), among others:

- S'WELL (stylized) (U.S. Reg. No. 4,234,092)
- S'WELL (U.S. Reg. No. 4,559,184)
- SWELL (U.S. Reg. No. 4,559,187)
- Stylized Droplet Logo (U.S. Reg. No. 4,988,754)

8

True and correct copies of the certificates of the foregoing registrations (collectively, "S'well's Registrations"), along with the status page for each registration (found at *uspto.gov*), are attached hereto as **Exhibit A**.

30.     Pursuant to Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), S'well's Registrations are *prima facie* evidence of the validity and registration of S'well's Registered Marks, of S'well's ownership of those marks, and of S'well's exclusive right to use those marks in commerce on or in connection with the goods specified in the registrations.

**C.     Defendants' Marketing and Sale of Counterfeit and Infringing Versions of the S'well Bottles**

31.     Despite S'well's established trademark rights, and with actual or constructive knowledge of those rights, Defendants acted or are acting in concert to:  (a) steal defective bottles that S'well ordered to be destroyed; (b) conceal this theft from S'well and its recycling broker by, in part, providing fraudulent written certifications that the bottles were actually destroyed; and (c) promote, distribute, offer for sale, and sell those defective bottles, falsely representing them to be new, genuine S'well Bottles, when in fact they were and are defective and otherwise materially different from genuine S'well Bottles. Not surprisingly, since they originated with S'well, those defective bottles bear trademarks and other indicia that are identical to, substantially indistinguishable from, or otherwise confusingly similar to S'well's Registered Marks for water bottles, and thus the bottles stolen and sold by Defendants are also counterfeit and infringing under federal law.

32.     Defendants' counterfeit and infringing goods have not been licensed, authorized, sponsored, endorsed, or approved by S'well, and Defendants are not associated, affiliated, or connected with S'well, or licensed, authorized, sponsored, endorsed, or approved by S'well in any way.

**S'well's Discovery of Sales of the Counterfeit and Infringing Versions**

33.     In or about May 2018, S'well discovered that counterfeit and infringing S'well Bottles bearing camouflage patterns were being offered for sale and sold through

FactoryDirect.ca, a Canadian discount retailer. S'well does not sell its S'well Bottles or any other S'WELL brand products through FactoryDirect.ca, nor does it authorize its distributors to do so.

34.     FactoryDirect.ca advertised the camouflage bottles as "brand new" genuine products offered by S'well under its S'WELL brand, and those bottles bore packaging and trademarks essentially identical to genuine S'well Bottles. However, because S'well never authorized the distribution or sale anywhere in the world of water bottles bearing those camouflage patterns, S'well knew FactoryDirect.ca's products were unlawful.

35.     On or about May 1 and 2, 2018, S'well made test purchases of the camouflage bottles from four different FactoryDirect.ca locations in Canada. Representative images of those bottles are shown below, and images of the receipts for those purchases are attached as **Exhibit B**.

  

  

36.     Upon receiving the camouflage bottles from FactoryDirect.ca, S'well was able to confirm that those bottles were among a run of defective bottles that S'well ordered from one of its Chinese factories, but rejected in its entirety in May 2017 for failure to adhere to S'well's quality control standards. After the camouflage bottles failed initial quality testing, S'well

cancelled the remainder of the order on or about May 4, 2017, but the manufacturer had already shipped approximately 20,000 units of the defective bottles (the "Counterfeit Bottles") to S'well's facilities in the United States. S'well stored the Counterfeit Bottles in one or more of its secure warehouses until on or about October 25, 2017.

**S'well's Efforts to Destroy and Recycle the Counterfeit Bottles**

37.     On or about October 25, 2017, S'well contacted its recycling broker, Vantage Waste & Recycling, Inc. ("Vantage"), and requested the destruction and recycling of the Counterfeit Bottles, which did not adhere to S'well's quality control standards and thus were never authorized for sale.

38.     According to information S'well received in a sworn affidavit, Vantage then contacted various metal recycling facilities to obtain pricing for the destruction and recycling of the Counterfeit Bottles, among other scrap and excess bottles in S'well's possession. Defendant TWS quoted Vantage a price of $.12 per pound, and Vantage retained Defendant TWS on or about October 25, 2017 to coordinate the trucking, transportation, and secured destruction and recycling of those bottles, including the Counterfeit Bottles. As is its usual practice, Vantage provided TWS with information as to the storage locations of merchandise to be destroyed, then followed up with TWS to inquire about the status of the job, requesting written certification of destruction and photographic evidence that the merchandise had been destroyed. Vantage later was informed that S'well's bottles, including the Counterfeit Bottles, were retrieved from S'well's storage locations on October 25, 26, and 27, 2017.

39.     On or about October 25, 2017, Defendant TWS provided Vantage with written certification that bottles originating with S'well had been destroyed (the "October 25 Certification"). The October 25 Certification, a copy of which is attached as **Exhibit C**, was signed by Defendant Fallas, purportedly on behalf of Defendant AEI, and certified that "the Merchandise was destroyed within the meaning of 'destruction' in 19 CFR U.S.C. § 191.2(g), i.e., that no articles of commercial value remained after the Merchandise was destroyed." The October 25 Certification did not contain any representation as to the quantity of bottles allegedly

destroyed. Based on the language in the October 25 Certification, which stated that the "Crushing" occurred at 4:15 p.m. on October 25, 2017, Vantage understood that the bottles destroyed by recycling on October 25, 2017 were the same bottles that TWS, AEI, Fallas, or others had retrieved from one or more of S'well's storage locations on that date.

40.     On or about October 27, 2017, Defendant LRS issued to Defendant AEI a "Recycling Certificate for Document Destruction" certifying that, regarding the "INSULATED STAINLESS STEEL BOTTLES," "on the date **10/27/17** your waste that was received at our facility was processed and destroyed by shredding & bailing so that it may not be read, recognized and [/]or sold for use which it was manufactured" (the "October 27 Certification"). A copy of this October 27 Certification, which did not contain any representation as to the quantity of bottles allegedly destroyed, was subsequently provided to Vantage. A copy of the October 27 Certification is attached as **Exhibit D**.

41.     On or about October 30, 2017, and in keeping with S'well's instructions, Vantage asked Defendant TWS to certify the quantity of bottles destroyed, which in Vantage's estimation should have been approximately 61,500, including the Counterfeit Bottles. On or about that date, TWS provided Vantage with a third certification that bottles originating with S'well had been destroyed, this time by "Recycling Compactor," on October 30, 2017 (the "October 30 Certification"). The October 30 Certification, a copy of which is attached as **Exhibit E**, represented that at approximately 3:40 p.m. on October 30, 2017, the signatory witnessed the destruction of approximately 61,500 bottles originating with S'well and that "the Merchandise was destroyed within the meaning of 'destruction' in 19 CFR U.S.C. § 191.2(g), i.e., that no articles of commercial value remained after the Merchandise was destroyed." The October 30 Certification was signed by an apparent agent of Defendant DWS and specified the location of destruction as a facility owned or operated by Defendant LRS.

42.     On or about October 30 and November 1, 2017, Defendant TWS also provided Vantage with photographs purporting to show the destruction of the bottles originating with S'well. Although the photographs appear to depict numerous boxes and cardboard tubes being

destroyed, it is impossible to tell from the photographs how many stainless steel bottles were destroyed (if any) such "that no articles of commercial value remained," as certified:







43.     Based on the documents in Exhibits C through E, among others, as well as the photographs above, Vantage provided S'well with a letter on or about October 30, 2017, in which Vantage confirmed "the secure destruction of approximately 61,058 Bottles," which "were taken offsite to a secure facility, sorted, and destroyed in accordance with all state and federal guidelines by way of recycling." A copy of Vantage's letter is attached as **Exhibit F**. Based on Defendant TWS's quoted price of $.12 per pound, Vantage wrote S'well a check for $5,904.77, which represented the commodity value of the stainless steel bottles, minus commissions.

**S'well's Enforcement Efforts**

44.     On May 4, 2018, S'well, through counsel, sent a demand letter to FactoryDirect.ca concerning the Counterfeit Bottles, and counsel for FactoryDirect.ca

subsequently provided S'well's counsel with an invoice and purchase order identifying Defendant CSS as FactoryDirect.ca's supplier of the Counterfeit Bottles. True and correct copies of this invoice and purchase order are attached hereto as **Exhibit G**.

45.     On May 10, 2018, S'well, through counsel, sent a demand letter to Defendant CSS concerning the Counterfeit Bottles, and counsel for CSS identified its supplier of the Counterfeit Bottles as an individual named "Robert Allas." CSS's counsel first represented that his client purchased the Counterfeit Bottles from Mr. "Allas" at a flea market located in Westbury, New York and had been dealing with Mr. "Allas" in this manner for as long as 15 years. CSS's counsel was nonetheless able to provide Swell's counsel only with a cell phone number allegedly belonging to Mr. "Allas." CSS's counsel represented that CSS had no further contact information for Mr. "Allas," nor any documentation concerning CSS's purchase of the Counterfeit Bottles from Mr. "Allas."

46.     The alleged phone number for Mr. "Allas" goes directly to a generic voicemail message and, as of the date of this filing, messages left at that number have gone unreturned.

47.     After S'well sued Defendant CSS (and "Robert Allas," as a John Doe defendant) in the United States District Court for the Southern District of New York, alleging in part that CSS had purchased the Counterfeit Bottles from Mr. "Allas" in Westbury, New York, CSS submitted a reply brief in support of its motion to dismiss for improper venue, representing for the first time in that brief that in fact CSS purchased the Counterfeit Bottles from the individual allegedly named "Robert Allas" at CSS's principal place of business in New Jersey. CSS failed to provide any explanation as to why it did not disclose this information sooner, nor did it provide any documentation of any kind concerning its purchase (or sale) of the Counterfeit Bottles or any further information concerning Mr. "Allas" or his alleged sales of the Counterfeit Bottles to CSS.

48.     On information and belief, Defendant Fallas, who signed the October 25 Certification (*see* Exhibit C), is the same person identified by Defendant CSS as "Robert Allas," CSS's supplier of the Counterfeit Bottles, and CSS knew at all material times that its source was

16

actually named "Fallas" and could be contracted through Defendant AEI. On information and belief, CSS deliberately declined to advise S'well of these facts, and instead allowed S'well to file a complaint against a misidentified defendant based on inaccurate venue information.

49.    At no time did S'well grant any of the Defendants any right, assignment, authorization, license, or other permission to produce, market, or sell products bearing the S'WELL Marks. To the contrary, S'well never authorized the distribution or sale of the Counterfeit Bottles, and S'well has expressly objected to Defendants' distribution and sale of the Counterfeit Bottles.

50.    Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

**FIRST CLAIM FOR RELIEF**
**FOR TRADEMARK COUNTERFEITING AND INFRINGEMENT**
**UNDER THE FEDERAL LANHAM ACT**
**(15 U.S.C. § 1114)**

51.    S'well repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

52.    S'well owns federal trademark registrations for S'well's Registered Marks in connection with bottles.

53.    S'well's Registered Marks are distinctive and have become associated in the public mind with products of the highest quality and reputation emanating from S'well as their source. The goodwill associated with S'well's Registered Marks in the United States is of great and incalculable value.

54.    Defendants have used in commerce marks that are identical to, substantially indistinguishable from, or confusingly similar to S'well's Registered Marks without S'well's authorization. Defendants intentionally have used such marks knowing them to be counterfeit.

55.    Defendants' unauthorized use of S'well's Registered Marks or counterfeits, copies, reproductions, or imitations thereof falsely represents Defendants' goods as emanating from or being authorized by S'well and places beyond S'well's control the quality of goods offered and sold under S'well's Registered Marks.

56.     Defendants' unauthorized use of S'well's Registered Marks or counterfeits, copies, reproductions, or imitations thereof in connection with the sale and distribution of the Counterfeit Bottles is likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendants' Counterfeit Bottles, and is likely to deceive the public into believing that Defendants' Counterfeit Bottles emanate from S'well, are sponsored, endorsed, or approved by S'well, are subject to S'well's quality control measures, or are otherwise associated with S'well.

57.     Defendants' unauthorized use of S'well's Registered Marks or counterfeits, copies, reproductions, or imitations thereof is willful, deliberate and done with the intent to reap the benefit of S'well's goodwill.

58.     Defendants' conduct constitutes trademark counterfeiting and infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 and makes this an "exceptional case" under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

59.     S'well is entitled to damages (including treble damages), costs, and attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

60.     Further, Defendants are causing irreparable injury to S'well and to its goodwill and reputation, and will continue both to damage S'well and to deceive the public unless enjoined by this Court. S'well has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**FOR UNFAIR COMPETITION UNDER THE FEDERAL LANHAM ACT**
**(15 U.S.C. § 1125(a))**

61.     S'well repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

62.     Defendants' unauthorized use of the S'WELL Marks and other indicia of the S'well Bottles in connection with their promotion, distribution, offering for sale, and sale of the Counterfeit Bottles constitutes unfair competition and a false designation of origin and false description or representation that S'well certifies the legitimacy, quality and authenticity of such products, when in fact it does not, and is thereby likely to deceive the public.

18

63.     Defendants' unauthorized use of the S'WELL Marks and other indicia of the S'well Bottles falsely represents that the Counterfeit Bottles are associated with S'well when in fact they are not, and is thereby likely to deceive the public.

64.     Defendants' acts of unfair competition are willful and deliberate and committed with an intent to reap the benefit of the goodwill and reputation associated with the S'WELL Marks and S'well Bottles.

65.     Defendants' conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and makes this an "exceptional case" under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

66.     S'well is entitled to damages (including treble damages), costs, and attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

67.     Defendants' conduct is causing irreparable injury to S'well and to its goodwill and reputation, and will continue both to damage S'well and to deceive the public unless enjoined by this Court. S'well has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**FOR COMMON LAW UNFAIR COMPETITION**

68.     S'well repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

69.     Defendants' unauthorized promotion, distribution, offering for sale, and sale of the Counterfeit Bottles constitutes a false designation of origin and a false description or representation that the Counterfeit Bottles are authorized by S'well, and is thereby likely to confuse consumers.

70.     Defendants are using the S'WELL Marks and other indicia of the S'well Bottles, or confusingly similar variants thereof, with full knowledge that they are associated exclusively with S'well and exclusively designate the S'well Bottles. Defendants' acts of unfair competition are willful and deliberate and done with an intent to reap the benefit of the goodwill and

reputation associated with the S'WELL Marks, S'well Bottles, and other indicia of S'well as the source of relevant goods.

71.     Defendants' promotion, distribution, offering for sale, and sale of the Counterfeit Bottles constitutes common law unfair competition.

72.     Defendants' conduct is causing irreparable injury to S'well and to its goodwill and reputation, and will continue both to damage S'well and to deceive the public unless enjoined by this Court. S'well has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**FOR UNFAIR COMPETITION UNDER NEW JERSEY LAW**
**(N.J. REV. STAT. §§ 56:4-1 and 56:4-2)**

73.     S'well repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

74.     Defendants' unauthorized use of the S'WELL Marks and other indicia of the S'well Bottles in connection with their promotion, distribution, offering for sale, and sale of the Counterfeit Bottles is likely to deceive and confuse the public into believing that they are purchasing goods sponsored or approved by S'well. In engaging in this conduct, Defendants have misappropriated for their own the trademarks, reputation, and goodwill of S'well.

75.     Defendants' acts constitute unfair competition in violation of N.J. REV. STAT. §§ 56:4-1 and 56:4-2.

76.     Defendants' conduct is causing irreparable injury to S'well and to its goodwill and reputation, and will continue to both damage S'well and deceive the public unless enjoined by this Court. S'well has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, S'well prays for judgment as follows:

A.     That a permanent injunction be issued enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and

entities owned or controlled by Defendants, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

(1)     importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any counterfeit goods, and any other products that tend to deceive, mislead, or confuse the public into believing that Defendants' products in any way originate with, are sanctioned by, or are affiliated with S'well;

(2)     imitating, copying, or making unauthorized use of S'well's Registered Marks, other indicia of the S'well Bottles, or any other trademarks used by or associated with S'well;

(3)     importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of S'well's Registered Marks, other indicia of the S'well Bottles, or any other trademarks used by or associated with S'well;

(4)     using S'well's Registered Marks, other indicia of the S'well Bottles, or any other trademarks used by or associated with S'well, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product in such fashion as to relate or connect, or tend to relate or connect, such product in any way to S'well or to any goods sold, manufactured, sponsored, approved by or connected with S'well;

(5)     using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or public to believe that any product imported, exported, manufactured, distributed or sold by Defendants is in any manner associated or connected with S'well, or is sold, manufactured, licensed, sponsored, approved or authorized by S'well;

21

(6)     engaging in any other activity constituting unfair competition with S'well, or constituting infringement of S'well's Registered Marks;

(7)     disposing of, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any physical evidence, products, components of products, or documents (including computer records) of any kind, including inventory, packaging, invoices, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, and/or distribution of any merchandise bearing S'well's Registered Marks, other indicia of the S'well Bottles, or any other trademarks used by or associated with S'well, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

(8)     effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (7) above;

(9)     instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (8) above;

B.     Directing that Defendants make available to S'well for review, inspection and copying all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents and things concerning all transactions relating to the purchase or sale of counterfeit goods or any other products or packaging incorporating a simulation, reproduction, counterfeit, copy or colorable imitation of S'well's Registered Marks, other indicia of the S'well Bottles, or any other trademarks used by or associated with S'well; and provide to S'well the names, addresses and all other contact information in their possession (*e.g.*, telephone numbers, fax numbers) for the source(s) of such products and packaging, including all manufacturers, distributors and/or suppliers;

C.      Directing that Defendants deliver to S'well's counsel for destruction at Defendants' cost all signs, products, components of products, packaging, promotional material, advertising material, catalogs and any other item that bears, contains, and/or advertises products that bear or contain, counterfeit versions of S'well's Registered Marks, other indicia of the S'well Bottles, or any other trademarks used by or associated with S'well, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

D.      Directing that Defendants recall from all distributors, retailers or other recipients any and all counterfeit goods sold or distributed by Defendants under or in connection with S'well's Registered Marks, other indicia of the S'well Bottles, or any other trademarks used by or associated with S'well, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and, upon recall, to deliver such goods up to S'well's counsel for destruction at Defendants' cost;

E.      Awarding S'well its actual damages, trebled pursuant to 15 U.S.C. § 1117(a) and (b), arising out of Defendants' willful and unlawful acts, and requiring Defendants to account for and pay over to S'well three times the profits realized by Defendants from their infringement of S'well's Registered Marks and their unfair competition with S'well; or, in the alternative and at S'well's election, awarding S'well statutory damages pursuant to 15 U.S.C. § 1117(c);

F.      Awarding S'well its actual damages, trebled pursuant to N.J. Rev. Stat. § 56:4-2, arising out of Defendants' acts of willful deceptive trade practices;

G.      Awarding S'well exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

H.      Awarding S'well interest, including pre-judgment interest, on the foregoing sums;

I.      Awarding S'well its costs of this action, including its reasonable attorneys' fees and expenses pursuant to 15 U.S.C. § 1117(a);

J.      Directing that Defendants file with the Court and serve upon S'well's counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the above; and

K.      Awarding S'well such other and further relief as the Court may deem just and proper.

DATED:  October 3, 2018                    Respectfully submitted,

                                           KILPATRICK TOWNSEND & STOCKTON LLP


                                    By:    */s/ Frederick L. Whitmer*
                                           Frederick L. Whitmer (FW-8888)
                                           *fwhitmer@kilpatricktownsend.com*
                                           Robert Potter
                                           *rpotter@kilpatricktownsend.com*
                                           Olivia Harris
                                           *oharris@kilpatricktownsend.com*
                                           *Pro hac vice applications forthcoming*

                                           The Grace Building
                                           1114 Avenue of the Americas
                                           New York, New York  10036
                                           Telephone:  (212) 775-8733
                                           Facsimile:  (212) 775-8816

                                           *Attorneys for Plaintiff*