Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CAN'T LIVE WITHOUT IT, LLC,**<br><br>                      **Plaintiff,**<br><br>           v.<br><br>**CLOSEOUT SURPLUS & SALVAGE,**<br>**INC.,** *et al.***,**<br><br>                      **Defendants.** | Civil Action No. 18-14606 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

      Before the Court is plaintiff Can't Live Without It, LLC d/b/a S'well bottle's ("Plaintiff") unopposed motion for default judgment and request for a permanent injunction against defendants Robert Fallas, Michael Sperduto, and The Closeout Guide Inc. ("TCG") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). (D.E. No. 102 ("Motion")). For the following reasons, Plaintiff's Motion is GRANTED.

**I.    Background**

      Plaintiff owns the following federal trademark registrations: (i) Reg. No. 4,234,092 for the mark "S'WELL" (stylized); (ii) Reg. No. 4,559,184 for the mark "S'WELL"; (iii) Reg. No. 4,559,187 for the mark "SWELL"; and (iv) Reg. No. 4,988,754 for the stylized droplet logo (collectively, the "S'WELL Marks"). (D.E. No. 46 ("Amended Complaint" or "Am. Compl.") ¶ 31; *see* D.E. No. 46-1, Ex. A). In May 2017 and December 2018, Plaintiff discovered that bottles bearing the S'WELL Marks and camouflage patterns were being offered for sale and sold through FactoryDirect.ca, a Canadian discount retailer, and Grocery Outlet, "a supermarket company that offers discount, overstocked and closeout products from name brand and private label suppliers."

(Am. Compl. ¶¶ 35 & 39).  Because Plaintiff never authorized the distribution or sale anywhere in the world of its bottles bearing those camouflage patterns, Plaintiff knew that FactoryDirect.ca's and Grocery Outlet's products were unlawful.  (*Id.* ¶¶ 36 & 40).  Upon further investigation, Plaintiff confirmed that those bottles were among an order that it rejected in May 2017 for failure to pass its quality control testing.  (*Id.* ¶ 38).  However, while Plaintiff canceled the order in its entirety, its Chinese manufacturer had already shipped about 20,000 units of the defective bottles ("Defective Bottles") to Plaintiff's facilities in the United States.  (*Id.*).  Plaintiff thus stored the Defective Bottles at one of its secure warehouses in the United States and contacted its recycling broker, Vantage Waste & Recycling, Inc. ("Vantage"), for the destruction and recycling of the Defective Bottles.  (*Id.* ¶¶ 38 & 43).

Vantage retained metal recycling facility Trademark Waste Solutions LLC ("TWS") to coordinate the trucking, transportation, and secured destruction and recycling of the Defective Bottles.  (*Id.* ¶ 44).  TWS provided Vantage with various confirmation showing destruction of the Defective Bottles.  (*Id.* ¶¶ 44–45 & 47–48).  One of such confirmation is a written certification signed by defendant Fallas, certifying that "the [Defective Bottles were] destroyed within the meaning of 'destruction' in 19 CFR U.S.C. § 191.2(g), i.e., that no articles of commercial value remained after the [Defective Bottles were] destroyed."  (*Id.* ¶ 45).

On May 4, 2018, Plaintiff sent a demand letter to FactoryDirect.ca regarding the Defective Bottles, and counsel for FactoryDirect.ca subsequently provided Plaintiff with an invoice and purchase order identifying Closeout Surplus & Salvage, Inc. d/b/a CSS, Inc. ("CSS") as FactoryDirect.ca's supplier of the bottles.  (*Id.* ¶ 50).  Plaintiff subsequently sent a demand letter to CSS, who then identified its supplier of the bottles as defendant Fallas, the CEO of defendant TCG.  (*Id.* ¶¶ 51–53 & 60).  Plaintiff engaged in similar enforcement efforts with Grocery Outlet

in January 2019.  (*Id.* ¶ 55).  Grocery Outlet's supplier, Braha Industries Inc., informed Plaintiff that it purchased the Defective Bottles from TCG and Fallas.  (*See id.* ¶¶ 56–57 & 59).  Moreover, defendant Sperduto was directly hired to provide for the transportation and destruction of the Defective Bottles and, accordingly, had full knowledge of the quantities and locations of the Defective Bottles that were supposed to be destroyed.[1]  (*Id.* ¶¶ 61–63).  Plaintiff essentially alleges that "*all* of the [Defective Bottles] that [Plaintiff] had intended to recycle were, in fact, diverted and misappropriated by Fallas and Sperduto, in collaboration with the other [d]efendants, and were sold by defendant [TCG]."  (*Id.* ¶ 64 (emphasis in original)).

On October 3, 2018, Plaintiff filed a complaint against Defendants, among five other known defendants who have been dismissed from the instant action.  (D.E. No. 1 ("Complaint" or "Compl."); *see* D.E. No. 107).  On April 12, 2019, Plaintiff filed the Amended Complaint asserting claims against Defendants for (i) trademark counterfeiting and infringement under the Lanham Act,15 U.S.C. § 1114, (Count I); (ii) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), (Count II); (iii) common law unfair competition (Count III); (iv) unfair competition under New Jersey law, N.J. Stat. Ann. §§ 56:4-1 & 56:4-2, (Count IV); and (v) common law conversion (Count V).  (Am. Compl. ¶¶ 68–102).

The Amended Complaint and summons were served on each Defendant.  (D.E. Nos. 43, 49 & 50).  After Defendants' time to answer or otherwise respond to the Amended Complaint passed, Plaintiff filed a request for entry of default on June 19, 2019.  (D.E. No. 66).  Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered default against Defendants on

---

[1] The Amended Complaint contains apparently inconsistent information as to Sperduto's employer.  It alleges that "Sperduto was an employee of defendant DWS at the time when" the Defective Bottles were misappropriated.  (*Id.* ¶ 61).  The Amended Complaint also alleges that "Sperduto was directly hired by TWS to provide for the transportation and destruction" of the Defective Bottles.  (*Id.* ¶ 63).  For purposes of this Opinion, however, the inconsistency is immaterial.

November 5, 2019.  Thereafter, Plaintiff filed the instant Motion with a supporting brief.  (D.E. No. 102 & D.E. No. 104 ("Pl. Mov. Br.")).  Defendants have not filed an opposition or response to Plaintiff's Motion.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 55, the Court may enter default judgment against a party that fails to answer or otherwise defend against claims asserted against it.  To obtain a default judgment pursuant to Rule 55(b), the moving party must first obtain an entry of default pursuant to Rule 55(a).  *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006).  After obtaining entry of default, parties are not entitled to the subsequent entry of default judgment as of right; rather, it is within the discretion of the court whether to enter default judgment.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

Before entering default judgment, the Court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages."  *Travelodge Hotels, Inc. v. Wilcox Hotel, LLC*, No. 17-0391, 2018 WL 1919955, at *3 (D.N.J. Apr. 23, 2018).  A party seeking default judgment is not entitled to relief as a matter of right; rather, the Court may enter default judgment "only if the plaintiff's factual allegations establish the right to the requested relief."  *Ramada Worldwide Inc. v. Courtney Hotels USA, L.L.C.*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (quoting *Nautilus Ins. Co. v. Triple C. Const. Inc.*, No. 10-2164, 2011 WL 42889, at *4 (D.N.J. Jan. 6, 2011)) (internal quotation marks omitted).  At this juncture, the Court must accept all factual allegations as true, except with respect to damages.  *Premium Sports, Inc. v. Silva*, No. 15-1071, 2016 WL 223702, at *1 (D.N.J. Jan. 19, 2016).

In addition, the Court must consider the following three factors prior to granting default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A meritorious defense is one that "if established at trial, would completely bar plaintiff's recovery." *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995) (quoting *Foy v. Dicks*, 146 F.R.D. 113, 116 (E.D. Pa. 1993)). Furthermore, a defendant's culpable conduct in allowing default is a relevant consideration for a district court. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).

### III. Discussion

#### A. Jurisdiction and Service

When a party requests default judgment against a party that fails to file a responsive pleading, the Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008). The Court finds that it has both subject matter jurisdiction over this matter and personal jurisdiction over Defendants.

##### i. Subject Matter Jurisdiction

Plaintiff alleges claims for trademark infringement and unfair competition under Section 32 of the Lanham Act pursuant to 15 U.S.C. §§ 1114 and 1125(a), thereby invoking the Court's federal question jurisdiction. 28 U.S.C. § 1331. Accordingly, the Court has subject matter jurisdiction over Counts I and II, and supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(a); *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 706 (2006); *Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 387 (D.N.J. 1996).

## ii.     Personal Jurisdiction

Plaintiff alleges that Fallas and Sperduto are New Jersey residents. (Am. Compl. ¶¶ 12 & 15). Thus, this Court has personal jurisdiction over Fallas and Sperduto. *Goodyear Dunlop*, 564 U.S. 915, 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). Plaintiff alleges that TCG is a corporation organized and existing under the laws of the State of New York and having its principal place of business at 1110 Route 109, Farmingdale, New York 11735. (Am. Compl. ¶ 16). The Court thus does not have general personal jurisdiction over TCG. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (internal quotation, citation, and alteration omitted).

Under Federal Rule of Civil Procedure 4(k), personal jurisdiction over non-resident defendants may only be exercised to the extent that it is authorized by the laws of the state in which the federal court sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long arm statute permits jurisdiction over a non-resident defendant to the extent that is permitted by the United States Constitution. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In determining whether sufficient minimum contacts exist, a court looks at "the relationship among the defendant, the forum, and the litigation." *Pinker v. Rosche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

Plaintiff maintains that TCG is subject to the personal jurisdiction of this Court because it has "engaged in concerted acts within the State of New Jersey pursuant to a common plan to market, distribute, offer for sale, and sell goods that infringe [Plaintiff's] intellectual property."[2] (Pl. Mov. Br. at 3 (quoting Am. Compl. ¶ 19)). The Court agrees. The Amended Complaint specifically alleges that CSS, a co-defendant who has since been dismissed from this case, represented to the United States District Court for the Southern District of New York that it purchased the Defective Bottles from Fallas, who allegedly is the CEO of TCG, "at CSS's principal place of business in New Jersey." (Am. Compl. ¶ 52; *see id.* ¶ 53). As discussed above, the Amended Complaint also alleges a series of events that occurred in New Jersey that involve the stealing, concealing, promoting, distributing, and selling of the Defective Bottles. (*See* Am. Comp.). Plaintiff sufficiently alleges TCG's involvement with the sales of the Defective Bottles and association with the co-defendants within New Jersey, based on which Plaintiff asserts five causes of action against Defendants. The Court thus finds that it also has specific personal jurisdiction over TCG for all causes of action alleged against it.

      *iii.*    *Service of Process*

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Philadelphia*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). Here, Sperduto was personally served in New Jersey. (D.E. No. 50). The Amendment Complaint and summons were personally served upon Fallas and TCG's counsel, Rachel E. Simon, who "agreed to accept service on behalf of" Fallas and TCG. (D.E. No. 49). The Court finds that Plaintiff properly served each

---

[2] The Court notes that "the specific jurisdiction determination is both claim-specific and defendant-specific." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (concurring) (internal citations omitted), and that Plaintiff does not address the Court's specific personal jurisdiction over Defendants in a claim-specific manner. However, for reasons discussed below, the Court finds that it has jurisdiction to hear all claims against Defendants.

Defendant. Fed. R. Civ. P. 4(e)(2)(A) & (h)(1)(B)); *see Reckling v. Okechuku*, No. 07-1699, 2007 WL 2473831, at *5 (D.N.J. Aug. 27, 2007) (stating "service on the attorney is effective as to the client if the attorney is expressly or impliedly authorized to accept service for the client").

### B. Sufficiency of the Pleading

#### i. Counts I–IV: Trademark Infringement & Unfair Competition

Next, "the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Primo No. One in Produce, Inc. v. VG Sales LLC*, No. 16-1395, 2017 WL 202169, at *2 (D.N.J. Jan. 18, 2017) (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008)). Plaintiff asserts trademark counterfeiting and infringement under 15 U.S.C. § 1114 (Count I). (Am. Compl. ¶¶ 68–77). Plaintiff also asserts claims for unfair competition under 15 U.S.C. § 1125(a) (Count II), common law unfair competition (Count III), as well as unfair competition under New Jersey statute (Count IV). (Am. Compl. ¶¶ 78–93). Because "the elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law," the Court's following analysis applies to Counts I to IV of the Amended Complaint. *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002); *see also* N.J. Rev. Stat. §§ 56:4-1 & 56:4-2; *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 386 (D.N.J. 2002); *Cornwell Quality Tools Co. v. Blanco*, No. 16-05086, 2018 WL 2441750, at *3 (D.N.J. May 31, 2018) (citing *Fruit Flowers, LLC v. Jammala, LLC*, No. 14-5834, 2015 WL 5722598, at *3 (D.N.J. Sept. 29, 2015)).

To establish a legitimate cause of action for an alleged violation of the Lanham Act, a plaintiff must show that: (1) "it has a valid and legally protectable mark; (2) it owns the mark; and

(3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). "The first two elements are satisfied by registration and ownership of the relevant trademarks." *Coach, Inc. v. Quisqueya Agency Inc.*, No. 13-3261, 2014 WL 3345434, at *1 (D.N.J. July 8, 2014). Additionally, "to prevail on a trademark infringement claim, the plaintiff is required to show that the defendant's use of the offensive mark is unauthorized." *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. 8-4248, 2009 WL 1687484, at *3 (D.N.J. June 16, 2009) (citing *Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990) (hereinafter "*Opticians*").

Here, Plaintiff has established that it is the owner of valid and legally protected S'WELL Marks in satisfaction of the first two elements. (Am. Compl. ¶ 31; *see* D.E. No. 46-1, Ex. A); *E.A. Sween Co. v. Deli Express of Tenafly, LLC.*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) ("A 'certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark' and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims.") (quoting *Coach, Inc. v. Cosmetic House*, No. 10-2794, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011)). Plaintiff also contends that at no time did Plaintiff grant any of the Defendants any right, assignment, authorization, license, or other permission to produce, market, or sell products bearing the S'WELL Marks. (Am. Compl. ¶ 65). Accordingly, the Court must assess whether Plaintiff has also established whether Defendants' distribution and sales of the Defective Bottles give rise to a likelihood of confusion.

A likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product

9

or service identified by a similar mark." *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (quoting *Ford Motor Co., v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991)); *see also Lorillard Techs, Inc. v. NJ Ale House, L.C.C.*, No. 14-2044, 2015 WL 1197531, at *8 (D.N.J. Mar. 13, 2015). The Third Circuit has established ten non-exhaustive factors when conducting a likelihood of confusion analysis. *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983). However, the Third Circuit noted that when the trademark holder and the alleged infringer have competing goods or services, the court will rarely need to "look beyond the mark itself." *Id.* at 462. In addition, the Third Circuit has also "repeatedly insisted that the *Lapp* factors are not to be mechanically tallied, but rather that they are tools to guide a qualitative decision." *A&H Sportswear*, 237 F.3d at 210. Moreover, the Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff. *Opticians*, 920 F.2d at 195 (finding "likelihood of confusion . . . inevitable, when . . . the identical mark is used concurrently"); *see also U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) (holding that "a great likelihood of confusion [exists] when an infringer uses the exact trademark").

This Court need not conduct a detailed analysis under each *Lapp* factor because Plaintiff's Amended Complaint, which must be perceived as true at this juncture, establishes a significant likelihood of confusion. *See Comdyne I Incorporated v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The Amended Complaint sufficiently alleges that Defendants stole the Defective Bottles and resold them without Plaintiff's permission. (Am. Compl. ¶ 1). Unbeknownst to the customers, the Defective Bottles sold by Defendants were rejected by Plaintiff through its quality control process and "pose[d] a potential health and safety risk to consumers." (Am. Compl. ¶¶ 5, 23 & 38). Accordingly, there is little doubt that Defendants' sales of the Defective Bottles, which bore Plaintiff's exact trademarks, are highly likely to cause consumer confusion. *See U. S. Jaycees v.*

*Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) ("there is great likelihood of confusion when an infringer uses the exact trademark"); *Opticians*, 920 F.2d at 195 (finding "likelihood of confusion . . . inevitable, when . . . the identical mark is used concurrently"). The Court thus finds that the Amended Complaint sufficiently alleges that Defendants infringe on Plaintiff's trademarks in violation of 15 U.S.C. § 1114 and §1125(a), as well as unfair competition under common law and New Jersey statue.

        ii.        *Count V: Conversion*

To assert a claim for conversion, the plaintiff must allege (1) "the property and right to immediate possession thereof belong to the plaintiff;" and (2) "the wrongful act of interference with that right by the defendant." *Canon Fin. Servs., Inc. v. Serveco N. Am., LLC*, No. 19-17910, 2020 WL 4035460, at *7 (D.N.J. July 16, 2020) (citing *Kromah v. Kagan*, No. A-3499-17T4, 2019 WL 1283886, at *2 (N.J. Super. Ct. App. Div. Mar. 19, 2019)). Plaintiff sufficiently alleges the property and right to S'WELL Marks belong to Plaintiff. (Am. Compl. ¶ 31; D.E. No. 46-1, Ex. A). Plaintiff also alleges that Defendants wrongfully interfered with Plaintiff's right to the trademarks by stealing the Defective Bottles, failing to destroy the bottles, and reselling them online. (*See* Am. Compl. ¶ 33). The Court finds that Plaintiff has sufficiently stated its claim for conversion under New Jersey law.

    **C.**    **Appropriateness of Default Judgment**

To determine whether granting default judgment is proper, the Court must make factual findings "as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc., v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

Courts have noted, however, that "these factors are more applicable to situations where the defaulting party has made an appearance, particularly where the party wishes to reopen a previously entered default." *Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-1581, 2007 WL 1674485, at *3 (D.N.J. June 8, 2007) (citation omitted).  Where, as here, the defendant failed to plead or otherwise defend, courts have held that they are "not in a position then to determine whether [the defendant has] a meritorious defense or whether any delay is the result of culpable misconduct." *Id.* (internal quotation marks and citation omitted).  In fact, Defendants' "[r]eckless disregard for repeated communications from plaintiff[] . . . can satisfy the culpable conduct standard." *Nationwide*, 175 F. App'x at 523 (citation omitted).

Additionally, Defendants have not responded to Plaintiff's motion for default judgment. In such a situation, courts have held that denying default would prejudice the plaintiff because there would be no recourse against the defendant.  *Days Inn*, 2007 WL 1674485, at *5; *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding plaintiff "will suffer prejudice if the Court does not enter default judgment as [p]laintiff has no other means of seeking damages for the harm caused by [d]efendant").  And "[t]he public concern for enforcing the Lanham Act . . . weighs in favor of entering default judgment in this matter." *Days Inns*, 2007 WL 1674485 at *5.  Accordingly, the Court finds that default judgment is proper in this case.

**IV.  Injunctive Relief**

Plaintiff requests that the Court enter a permanent injunction against Defendants to enjoin them from further infringing on Plaintiff's S'WELL Marks and to abandon and/or cancel any application to register the S'WELL Marks or a substantially similar mark to Plaintiff's S'WELL Marks.  (*See* Am. Compl. at 21–22; Pl. Mov. Br. at 4–5; D.E. No. 103).  Courts may enter a

12

permanent injunction against defendants in a trademark infringement and unfair competition case "in the context of a default judgment where the[ ] [permanent injunction] requirements are met." *Howard v. Laws*, No. 13-0957, 2014 WL 3925536, at *8 (D.N.J. Aug. 12, 2014); *see also Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *10 (D.N.J. June 14, 2010). Additionally, pursuant to 15 U.S.C. § 1116, "[c]ourts ha[ve] the authority to grant injunctive and other equitable relief to prevent . . . violations of a plaintiff's trademark rights." *Chanel*, 558 F. Supp. 2d at 539 (D.N.J. 2008). For the Court to grant injunctive relief to prevent further violation of Plaintiff's mark, Plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted).

The Court finds that permanent injunctive relief is warranted. First, it is well settled that trademark infringement may amount to irreparable injury as a matter of law. *See Citizens Fin. Grp. Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 125 (3d Cir. 2004) (determining that trademark infringement amounts to irreparable injury as a matter of law). This is because the "[l]ack of control over one's mark 'creates the potential for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (quoting *Opticians*, 920 F.2d at 196); *see also Coach, Inc. v. Bags & Accessories*, No. 10-2555, 2011 WL 1882403, at *9 (D.N.J. May 17, 2011). This is precisely the case here—Defendants' sales of the Defective Bottles bearing the S'WELL Marks threatened Plaintiff's goodwill it garnered from its trademarks.

13

Accordingly, Plaintiff has established that monetary damages are inadequate to compensate its injury.

Furthermore, in considering the balance of hardships to Plaintiff and Defendants, the Court finds that equity warrants the relief Plaintiff seeks. Defendants will not be unduly burdened by the issuance of an injunction. In fact, the only "hardship" to Defendants is that they will be refrained from engaging in continuous unlawful conduct. *See Coach*, 2011 WL 1882403 at *9 (finding that "[t]he only hardship imposed upon the [d]efendants is that they obey the law"). Thus, the balance of the hardships warrants an equitable remedy.

Finally, the public interest weighs in favor of Plaintiff. The Third Circuit has recognized the public interest in enforcing trademark rights. *See Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984) (determining that "there is a public interest in the protection of the trademark and to avoid confusion in the public"). Indeed, "[i]ssuing an injunction will serve the public interest goals of preventing consumer confusion and the trademark holder's property interest." *Coach*, 2011 WL 1882403, at *9 (citing *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007)).

Accordingly, because Plaintiff has satisfied the factors for a permanent injunction articulated in *eBay*, the Court will grant Plaintiff a permanent injunction that prevents Defendants from further infringing on Plaintiff's S'WELL Marks. *See eBay*, 547 U.S. at 388.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment and a permanent injunction to enjoin Defendants from using its S'WELL Marks. An appropriate Order and Final Judgment follows.

Date: April 9, 2021

<u>s/Esther Salas</u><br>
<b>Esther Salas, U.S.D.J.</b>